5-0-2-5, CMG Transmission Management, for the United States. Good morning, Your Honors. May it please the Court. There are a number of interesting issues in this case, but I believe it really can be boiled down to a single point. Congress enacted Sections 419, 419A, and 512 of the Internal Revenue Code simultaneously to address the identical concern with respect to two complementary activities pertaining to ZIBAs. In these cases, Congress determined that prior ZIBA taxation was overly generous with respect both to deductible contributions made to ZIBAs and tax-free income earned by ZIBAs. In both cases, Congress stated that the law was being changed to eliminate tax benefits based on unreasonable accumulations of funds by ZIBAs. It is simply inconceivable that Congress could have intended unreasonable accumulation to mean one thing with respect to Section 419 and 419A and another thing with respect to Section 512. A simple example will demonstrate this point. Assume a ZIBA with an account limit well in excess of the allowable 419A amount at the beginning of the year. Assume also that the ZIBA for that year pays out benefits in excess of its income. Without question, under Sections 419 and 419A, an employer may make a deductible contribution to the ZIBA for the year in an amount equal to the excess of its benefit payments over its income. Clearly, Congress determined that such a contribution would not result in an unreasonable accumulation of funds in the ZIBA, notwithstanding the fact that the ZIBA already exceeded the 419A limit. Given the fact that Congress enacted Section 512 at the same time as it enacted 419 and 419A for complementary purposes, it is inconceivable that the Congress that determined that an employer contribution to fund ZIBA benefits during the year did not produce an unreasonable accumulation of funds would have simultaneously determined, as the government contends, that income earned by the ZIBA during the same year that was spent on benefits did produce an unreasonable accumulation of funds. That must be the case because for every dollar less of income during the year, the employer could have increased its deductible contribution by one dollar. Given the fact that the code provisions addressing these issues were adopted at the same time for the same purpose. I think the whole case is boiled down to that point. Now, the government makes some effort to refute this by saying that, well, Section 419 on space says that the section applies for the purposes of this section only. Our argument is not that Section 419 applies to Section 512. It's simply that, as the Supreme Court and this court has held, that when words are used with respect to similar sections of the same statute, they have to be construed consistently. And the legislative history makes clear that the only basis given by Congress for changing the law was to avoid unreasonable accumulation of funds. The government makes a second argument where it kind of attempts to reduce our argument to nonsense by saying that we are arguing that 419 and 512 can't apply simultaneously. That's certainly not the case. We're not doing that at all. They each apply independently, but they need to be applied consistently. The government's position is entirely based on a temporary regulation that was taken from a report of the staff of the Committee on Joint Income Taxation. Now, in general, those reports have been held by all courts to be not worth very much, particularly when the legislative history takes a different tack. Are you suggesting that because the Treasury Reg is relying on this report that it gets less deference than it otherwise would be compelled to get under a case law? I am saying that, number one, that what is in the joint committee report should not be given much weight at all. It should not be given any weight by whom? By us independently? Yes, by you independently. I'll come to the regulation in a moment. But it should not be given any weight by the court. When the statute talks about income resulting in something, one doesn't intuitively come up with the complex formulation that the Internal Revenue Service goes so far as to call an algorithm as the interpretation of results. And it is so precise and so unintuitive that if Congress had ever intended that to be the rule, it would have put it in the statute, or at the very least, it would have put it in its own legislative history. Now, the regulation itself, as we have pointed out, is procedurally invalid. It's a temporary regulation that was issued... I thought the validity of the regulation was an issue that was arguably weighed. The court said at the oral argument that it would not hear that because it was not raised in the brief. So, if that is the case, then it would be improper, would it not, for it to be raised unappealing for us to consider? The case law is clear that you have the authority, the discretion, to consider new arguments raised at this level if there's no prejudice to the government. This is not a factual issue. There are no facts that the government could have raised in the court below. And it's also an important issue, notwithstanding the government's effort to state otherwise. As we pointed out in our brief, in the government's motion for an extension of time to file its brief, it said that this was a very important issue because if you were to affirm the lower court, there would be a split in the circuits and also there were hundreds, perhaps thousands, of VBAs that would also be affected. There's also one more case already on hold in the claims court that involves the same issue. And if this court doesn't address it, surely some other court will because if we were to lose on a technicality, then there are many other VBAs that will make sure to argue the invalidity of the regulation at the trial level and they won't run into that problem. And maybe that's the way it should be done. Excuse me? Maybe that's the way it should be done. Well, I don't think that would be particularly fair, especially since this issue... Well, if it was that important, it should have been raised in the trial. Well, let me explain one reason why it wasn't raised at the trial. That if you look at the Sixth Circuit opinion, the Sixth Circuit said that the temporary regulations did not favor the government. If anything, they favored the taxpayer. And it seemed to me at that point that it would have been odd to go into the court with our main argument being that the regulation was invalid when the Sixth Circuit found that the regulation favored the taxpayer. So it really wasn't until the lower court placed the entire decision on the basis of this temporary regulation that the issue really was brought to the fore. And I think that... You want to say your rebuttal? You're into it now. Thank you. All right, thank you. Mr. Green? Good morning, Your Honor. It's Kat Green on behalf of the United States. C&G's argument in this case is based essentially upon the idea that the money, whether it was an employer contribution in the case of 419, or investment income in the case of 512, was actually spent on employee benefits. In fact, there is no actual tracing of money of what is actually spent. What they're really talking about is that on their books, they allocate toward that. It's essentially a bookkeeping maneuver. So their position is, therefore, that anything less than the money that was paid out for benefits should be exempted. Right. Is that right? What they're trying to say is that there is this ordering rule, and they look to Section 419C2 to come up with this ordering rule. And 419C2 says, essentially, that after-tax income is... Well, the employer gets a deduction for contributions to the qualified cost, and the qualified cost is reduced by after-tax income. After-tax income is made up of investment income and also employee contributions. But this is not an ordering rule. In fact, all that 419 and all that 512 has are mathematical formulas, computations that they use to determine whether in the case of 419, there's a limit on an employer contribution, the deduction for the employer contribution, or in the case of 512, whether a certain amount of the investment income is subject to tax. So this is just part and parcel of this computation method. Remember, again, money is fungible. There's no actual expenditure of any certain dollar on any certain benefit. All Congress was doing was attempting to, on the one hand, make sure that investment income was limited in the amount that was tax-exempt, and, on the other hand, limit the amount of deduction that an employer could get. They had two separate ways of doing it. So it's not surprising at all that, since they're aimed at two different manifestations of the problem, the employer contribution and the deduction that he's going to reap from that, and then the accumulation of the tax-free income. And I guess that's another point. Accumulation. They look to the 84 Act to focus on this term accumulation. Well, because the court said accumulation of tax-free income, recognizing the fungibility of dollars, the fact of the matter is that when it's in the account, that income is still being accumulated. Indeed, given the fungibility of income, C&G's position allows them to accumulate tax-free income here. But, as I said before, these are aimed at two different manifestations of the problem, the employer deduction and the investment income, the excess investment income. Did the government argue below that the statute was clear, or did they concede that the statute was clear? No, we argued below that the statute is clear, and we continue to argue that on appeal. We believe that the statute is clear. The court of law, however, found some ambiguity in the statute. So if the statute is clear, were the regulations necessary, therefore? I mean, weren't the regulations necessarily intended to clarify ambiguities in the statute? What was the point? Well, the regulation is intended to explain the statute. Oftentimes, if you look at the regulations, you'll find, even though it's encompassed in a regulation, it's not much more than a quote of the statute. In this case, we think that the language of the statute was clear, because the use of the term resultant mandates that this court held in Murakami only a causation requirement. I guess the IRS, just to make sure, did clarify the statute, which does not necessarily mean that the plain language of the statute still could not stand on its own without the regulation. I don't think it was so much as filling a gap that was open here, as in clarifying the language, making sure everybody understood exactly what was meant. But I think the plain language stands on its own. But going back to the other point, it's not surprising that, given that they were trying to limit two different things, that they would first seek to limit the employer deduction by looking to investment income and limit the tax-free investment income by recognizing that that income causes the overage. Remember, all of this is done by legislative grace, and so they could easily seek to limit one on the one hand but then consider the other on the other hand. The case of Sherwin-Williams is relied upon below. The court seemed to believe in that case that the limit applied to set aside income and not to set aside assets. The plain language of the statute compares the asset account to the permitted account balance. But the test is whether the account balance exceeds that limit. The investment income necessarily affects the account balance. The court said that paying plain slowly or fast would affect the limit. That's simply wrong. Paying the plain obviously reduces the year in assets and the account limit equally. The court also thought that the regulator supported the year, but in doing so it took certain statements of the regulation out of context. It thought that the fact that the regulation talked about something happening at the close of the taxable year supported the taxpayer's position here. Yes, you do look at the close of the taxable year, but what you're looking at is the total amount in the account versus the allowed account balance, the account limit, and seeing if there's an excess. That doesn't mean that those assets in that account must actually be traced to whether it be income or to employer contributions. Now, the taxpayer did raise on appeal here for the first time this idea that the reg was invalid under the APA. We agree with the court that that argument was not raised below. The most that they did was at one point in the oral argument state that if the court thought that the reg supported the government, that the reg was invalid. They didn't say whether it was invalid because of the APA. They didn't say whether it was invalid because it was an unreasonable interpretation of the statute. But the court found that there had been no raising of that issue under any guise before, and we agree with that. And the fact that they say that this issue solely concerns a legal argument, we believe is irrelevant that under a run trough that this court held that legal arguments were also waived. Moreover, they did not raise any sort of argument with regard to the invalidity of regulation in their claim for refund and barred under doctrine of duress. We do have one note to make yet, however. On page 27 and 28 of our brief, as additional support for our plain language argument, we posit an example involving employer deductions under section 419 and 419A. As further reflection, we believe the example is faulty and the court should not rely on it. Page and the brief? 27 and 28. The example does not detract from our argument that the crucial statutory phrase, requires only a causal connection, and given the fundability of money, there necessarily is a causal connection between investment income earned by Aviva and the amount of its account balance at the end of the year. In any event, the court below held that regulatory regulation applies here and requires the same result. The court has no further questions. Thank you. Mr. Fox. Thank you, Your Honor. I would first like to point out that the government's presentation seems to have abandoned its primary argument based on the regulation, because that regulation and the government's position is that the tracing as a secondary argument has nothing to do with anything that we lose on the basis of the regulation without regard to that point. Now, they are saying that we're wrong pretty much exclusively on this tracing argument. You must keep in mind that there were no employee contributions in this case to be taken into consideration, number one, and that while 419 clearly does not control 512, this court said in the National Organization of Veterans Advocates v. the Secretary of Veterans Affairs, which is cited in the brief 263rd-1365 at page 1379, that the idea of interpreting parts of statutes consistently, that the rule applies with equal force, whereas here the words at issue are used in two different sections of a complex statutory scheme, and those two sections serve the same purpose. These are the deductible contributions and the tax-free income are just two different parts of the same problem that Congress perceived. And to me it is inconceivable that when Congress determined in section 419 that the income of the VIVA was always spent before the contributions of the employer, and that's the case because it says you can only make contributions to the extent you don't have enough income to cover the expenses. So the statute says you're spending the money, the income on expenses before anything else, and clearly they're not spending the accumulated assets of the VIVA because Congress allows contributions to cover expenses no matter how great the assets of the VIVA are, and that's not an unreasonable accumulation. So if in section 419 Congress said that in this area the income is spent before the employer contributions, and of course the employer contributions are allowed to be made on a deductible basis without regard to the amount of assets, then it seems to me that consistency requires that the 512 be interpreted in the same fashion. The government just cited the Rentrop case having to do with a new argument. I would point out that Rentrop involved a jury case, and if that had to be sent back obviously it would have had to go back to a hold of trial. That's not required here and that's simply not in point. One last point. Well, as we pointed out in the brief Chevron deference to this regulation is wholly inappropriate because it's procedurally invalid. Under the Chevron case, it's a two-part analysis of the statute, and if under the first part of the analysis you can determine the clear meaning of the statute, and that means taking into consideration the legislative history, you never have to consider any regulations. And it is our position that it is perfectly clear given the complementary purpose of 419, 419, and 512, and the use of the words in the legislative history that what we're concerned about is unreasonable accumulations, that the statute is perfectly clear that if the money is spent on benefits during the year, then it should not be taxable in the VEBA. And if that's perfectly clear, the regulation becomes wholly irrelevant under Chevron because the statute is now clear. All right. Thank you very much. The case is submitted. Thank you. Live Thank you. Thank you. Thank you.